

Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 3144 | **DATE** | 10/2/2002 |
| **CASE TITLE** | CATHERINE WAHLFELDT vs. PUBLISHERS CIRCULATION | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]  ENTER MEMORANDUM OPINION AND ORDER: Summary judgment is granted in favor of Defendant Publishers Circulation Fulfillment, Inc. and this case is hereby terminated. This is a final and appealable order.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | Document Number |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | OCT 3 2002 | |
| | Notified counsel by telephone. | date docketed | |
| ✓ | Docketing to mail notices. | | 18 |
| ✓ | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| TBK | courtroom deputy's initials | date mailed notice | |
| | Date/time received in central Clerk's Office | mailing deputy initials | |



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

OCT - 3 2002

| | |
|---|---|
| CATHERINE WAHLFELDT, ) <br> ) <br> ) <br> Plaintiff, ) <br> ) <br> ) <br> v. ) <br> ) <br> ) <br> PUBLISHERS CIRCULATION ) <br> FULFILLMENT, INC., ) <br> ) <br> ) <br> ) <br> Defendant. ) | No. 01 C 3144 <br> Judge Ronald A. Guzman  OCT 3 2002 |

## MEMORANDUM OPINION AND ORDER

Pending is Defendant Publishers Circulation Fulfillment, Inc.'s motion for summary judgment pursuant to Fed. R. Civ. P. 56. For the reasons set forth below this motion is granted.

## BACKGROUND FACTS

The following facts are taken from Defendant's L.R. 56.1 statement and are deemed admitted because Wahlfeldt has failed to file a response to Defendant's 56.1 statement. *See* L.R. 56.1(b)(3)(B); *Michas v. Health Cost Controls of Illinois, Inc.*, 209 F. 3d 687, 689 (7th Cir. 2000). Defendant Publisher's Circulation Fulfillment, Inc. ("PCF") is a newspaper circulation business providing circulation services to various newspapers. PCF operates four



call centers across the United States, including its Call Center in Orland Park, Illinois. Plaintiff Catherine Wahlfeldt ("Wahlfeldt") is an individual residing at 9636 South Natoma, Oak Lawn, IL. 60453. Cmplt. ¶ 1. Wahlfeldt's date if birth is October 24, 1944. Cmplt. ¶ 1. Wahlfeldt claims that PCF disciplined her and terminated her from employment because of her age in violation of the Age Discrimination in Employment Act of 1967. Cmplt. ¶¶ 3, 7. It is undisputed that PCF maintains an Equal Employment Opportunity Policy as well as enforces an Anti-Harassment Policy and Complaint procedure. Ramirez Aff. ¶ 12; Ex. H to the Ramirez Aff. ¶ 12. PCF maintains and enforces a policy concerning confidential information that provides, in relevant part, that:

> In your job, you may have access to sensitive and confidential information. You should keep all such Company information confidential. [including] personnel information.

PCF also maintains and enforces a corrective action policy, providing for progressive corrective action in response to an employee's conduct or performance. Such correct action includes verbal warnings, first written warning plus counseling, final written plus additional counseling; and termination of employment. Ramirez Aff. ¶ 14; Ex. J to the Ramirez Aff.

Wahlfeldt was hired by PCF on November 3, 1986 as a telephone solicitor. Ramirez Aff. ¶ 4; Cmplt. ¶ 5. On or about January 16, 1989, Wahlfeldt was promoted to the position of A.M. shift Supervisor in the Telemarketing Department. Ramirez Aff. ¶ 4; Cmplt.¶ 5. Wahlfeldt's reports include Telemarketing Service Representatives ("TSRs"), the Assistant A.M. Shift Supervisor, and Verifiers. Chmielewski Aff. ¶ 6.Shift Supervisors are responsible

for the day-to-day management of each shift. Their responsibilities include:

> * Making all employment decisions in accordance with PCF's guidelines and to issue appropriate corrective action to employees.
> * Informing management concerning corrective action of employees.
> * Motivating TSRs to meet the production goals of the Telemarketing Department.
> * Operating the Telemarketing Department's autodialer and troubleshooting any dialer problems.
> * Consulting with management concerning unusual problems involving the autodialer.
> * Training Assistant Supervisor and Lead Verifiers concerning Telemarketing Department's computer system.
> * Implementing and consistently enforcing the attendance policy.
> * Maintaining accurate attendance records for the TSRs.
> * Preparing various reports.
> * Training and counseling all TSRs.
> * Conducting various daily and weekly meetings.

Ex. A to the Chmielewski Aff.

As the A.M. Shift Supervisor, Wahlfeldt reported to the Telemarketing Manager. From approximately 1998 to April 1999, William Hartford was the Sales Division Manager, and Wahlfeldt's immediate supervisor. Halona Gustin was the Assistant Sales Division Manager. Ramirez Aff. ¶ 4.

From June 1999 to the present, Pamela Chmielewski was the Sales Division Manager, and Wahlfeldt's immediate supervisor. Chmielewski Aff. ¶ 3. Before becoming Sales Division Manager, Chemielewski was the Senior Supervisor for the Telemarketing Department. Chmielewski Aff. ¶ 3.

Beginning in September 1998 until her termination in September 2000, PCF worked with Wahlfeldt to improve her supervisory skills and performance. Hartford, Gustin, Chmielewski and Ramirez provided Wahlfeldt with guidance and counseling on various issues,

including Wahlfeldt's application of PCF's attendance policy, her discipline and counseling of employees, her payroll administration,, and her reporting. As detailed below, Wahlfeldt repeatedly failed to meet PCF's performance requirements. Chmielewski Aff. ¶¶ 7-35; Exs. B-Y to the Chmielewski Aff; Ramirez Aff. ¶¶ 16-21; Exs. A to E to the Ramirez Aff.

On September 22, 1998, Hartford and Gustin issued a memorandum to all members of the Telemarketing management team concerning the confidentiality of employee issues and information. This memorandum stated, in relevant part, that:

> As members of the management team, all of you will be part to confidential employee information . . . In no way should other telemarketing employee be party to information about another employee.
>
> * * *
>
> As a member of the management team, you will be involved in situation where it will be necessary to discuss an employee situation to determine appropriate disciplinary action. It is important to remember that you should only discuss the situation with those employees immediately involved in the decision making process.
>
> * * *
>
> To maintain confidentiality of information, it is important that we realize that discussions regarding employees and performance should only be discussed in a closed door setting. Please also be careful to try and not leave a important papers containing confidential material in public places where other employees may see them.

Ex. A to the Ramirez Aff.

On October 13, 1998, Hartford and Gustin met with Wahlfeldt to discuss several issues relating to her job performance. Specifically, Wahlfeldt gave Pamela Ferruzza, a

TSR, a document containing another employee's financial information and asked Ferruzza to take the document to Human Resources. Whalfeldt also shared an employee's application for a Supervisor position with another employee. These incidents breached PCF's policy concerning confidentiality. Wahlfeldt also failed to advise management when an employee was late; failed to implement PCF's policies; and failed to support management's employment decisions and disputed them. Ex. B to the Ramirez Aff.

On October 30, 1998, Gustin advised Wahlfeldt that she had accrued over seven weeks of vacation time. Accordingly, Gustin advised Wahlfeldt to schedule at one week of vacation in each month from November 1, 1998 to March 30, 1999. Ex. C to the Ramirez Aff.

On December 8, 1998, Hartford issued a "Verbal Warning" to Wahlfeldt for disclosing another TSR's performance deficiencies with Ferruzza, a TSR, in violation of PCF's confidentiality policy. Ex. D to the Ramirez Aff. On January 7, 1999, Hartford evaluated Wahlfeldt's job performance. The overall rating was "Needs Improvement - Meets some, but not all, expectations for the position." In the Performance Review, Hartford noted the following deficiencies:

> **Job Knowledge and Skills:** Cathy does not seem to understand some of the intricacies of the position. For example, Cathy still needs help bringing up jobs, working in Paradox and Quattro Pro. Cathy should be well versed and familiar with the programs she uses every day.
>
> **Adaptability/Flexibility:** Cathy has not implemented all the changes on her shift.
>
> **Communication Skills:** Cathy could improve on giving negative feedback. For example, when Cathy is talking with a TSR that is

> generally unreceptive, she often times cuts in and interrupts their conversation. This frustrates both parties and rarely helps the TSR understand and retain the behavioral changes that desired.
>
> **Organizational Skills:** Cathy needs to improve on how she prioritizes her work at the end of her shift.
>
> **Internal Relationships:** Cathy has approached TSR's on the sales floor to offer criticism. Cathy should remember to never give negative feedback with sight or hearing range of other TSRs.
> **Decision Making/Problem Solving:** Cathy needs [to] make immediate improvements when it comes to showing good judgment. For example, Cathy informed an employee over the phone that they (sic) were terminated. This was not adhering to policy and bad judgment. Also, Cathy gave a confidential document that was to go to human resources to another TSR to deliver. Lastly, Cathy delegated the monitoring of TSR's to the AM Verifier, and they are not qualified to do monitoring.

Ex. E to the Ramirez Aff.

Following this review, Hartford and Gustin developed a skills enhancement program for Wahlfeldt beginning in January 1999, Chmielewski began working closely with Wahlfeldt to develop her supervisory skills, including adhering to policies, administering payroll, monitoring of employees, and troubleshooting autodialer and software problems. The purpose of this program was to assist Wahlfeldt in acquiring and enhancing her skills to ensure Wahlfeldt's success as a supervisor. Chmielewski Aff. ¶ 7; Ex. B to the Chmielewski Aff.

On January 18, 1999, Chmielewski met with Wahlfeldt to discuss attendance and payroll administration. Chmielewski reviewed the TSRs' attendance for the previous week and noticed certain issues concerning an employee's attendance. An employee had missed a day, and Wahlfeldt agreed to allow the employee to make up the day on a weekend shift. The employee

failed to work on the weekend shift, and Wahlfeldt then planned to allow the employee to make up the work on the following weekend. Wahlfeldt should have provided the employee with a verbal warning concerning her adherence to PCF's attendance policy. Wahlfeldt agreed to provide the verbal warning to the employee and to enforce PCF's attendance policy. Chmielewski also noticed errors in the formatting of a payroll report and counseled Wahlfeldt regarding the correct format for the report. Chmielewski Aff. ¶ 8; Ex. C to the Chmielewski Aff.

On January 19, 1999, Chmielewski met with Wahlfeldt and reviewed her discipline of Rosemary Larry, a TSR. Ms. Larry received a written warning for the attendance. Wahlfeldt advised Ms. Larry that she was not eligible for commission because she previously had been disciplined. This was incorrect. Ms. Larry was eligible for commissions; provided, however, that she had worked the required number of hours. Chmielewski worked with Wahlfeldt to ensure that Ms. Larry was deemed eligible for commissions.

On January 19, 1999, Chmielewski also reviewed with Wahlfeldt PCF 's policy to void a sale attributed to a TSR if the TSR inputs the sales data incorrectly three times in one month. The sale is then auctioned to the other TSRs. The purpose of this policy is to instruct the TSRs to input the sales data correctly. Whalfeldt did not follow this policy consistently. Wahlfeldt periodically would correct TSRs' sales, rather than raffling off to sale. Chmielewski counseled Wahlfeldt regarding the need to follow PCF's policy consistently. Chmielewski Aff. ¶ 10; Ex. D to the Chmielewski Aff.

On January 25, 1999, Wahlfeldt again counseled employees and provided warnings to employees at the Supervisors' Station in the Call Center, rather than in an office.

Chmielewski Aff. ¶ 11; Ex. E to the Chmielewski Aff. On January 26, 1999, Hartford and Chmielewski reviewed with Wahlfeldt her decision to provide feedback and counseling to TSRs at the Supervisors' Station in the Call Center on January 25, 1999. Hartford and Chmielewski counseled Wahlfeldt that it was inappropriate to counsel employees in the Call Center. Wahlfeldt agreed to use an office in the future and ensure that her assistant was covering the floor while she conducted the counseling session. Chmielewski Aff. ¶ 12; Ex. F to the Chmielewski Aff.

On January 26, 1999, Chmielewski again found a number of errors in Wahlfeldt's administration of the attendance policy. Specifically, Wahlfeldt failed to count all employees' absences and failed to prepare appropriate warning in a timely manner. Chmielewski Aff. ¶ 13; Ex. F to the Chmielewski Aff. On February 1, 1999, Chmielewski again counseled Wahlfeldt regarding her inappropriate administration of PCF's attendance policies. For example, Wahlfeldt gave an employee permission to use vacation time in lieu of a make-up day which is not permitted under PCF's policies. Chmielewski also reviewed Wahlfeldt's payroll and commission administration practices with her because Wahlfeldt had miscalculated an employee's commission. During the February 1, 1999 meeting, Wahlfeldt became very negative and stated, "You can't win for losing around here." Chmielewski Aff. ¶ 14; Ex. G to the Chmielewski Aff.

On February 4, 1999, Chmeilewski had a lengthy meeting with Wahlfeldt to review the previous three weeks of training. Chmielewski reviewed various attendance issues that she had brought to Wahlfeldt's attention, in particular Wahlfeldt attention, in particular Wahlfeldt's inconsistent application of PCF's attendance policies. Chmielewski also reviewed

PCF's commission and payroll policies. It response, Wahlfeldt again became negative and defensive and stated that she felt like she was being set up to fail. Chmielewski responded that PCF's intention was to help her improve her performance and responsibility as a supervisor. Chmielewski Aff. ¶ 15; Ex. H to the Chmielewski Aff.

On February 8, 1999, Chmielewski again counseled Wahlfeldt regarding her inappropriate administration of PCF's attendance policies. Specifically, Chmielewski reiterated to Wahlfeldt that she needed to prepare any attendance related disciplinary issues at the time of occurrence. Chmielewski also reminded Wahlfeldt that she should not counsel employees at the Supervisor's Station in the Call Center. Chmielewski Aff. ¶ 16; Ex. I to the Chmielewski Aff.

On February 15, 1999, Chmielewski again counseled Wahlfeldt regarding her administration of PCF's attendance policies, including her decisions to allow employees to carry over makeup days, to use vacation days for makeup days, and for failing to provide appropriate corrective action in response to attendance issues. Chmielewski reviewed Wahlfeldt regarding the need to record absences in a timely manner and to complete the schedule correctly. Chmielewski reminded Wahlfeldt to complete the sign all corrective action forms. Chmielewski Aff. ¶ 17; Ex. J to the Chmielewski Aff.

On February 24, 1999, Chmielewski met with Wahlfeldt to review her need to take vacation time because she had accrued approximately 9 weeks of vacation for 1999. Chmielewski informed Wahlfeldt that she needed to schedule her vacation time promptly so that PCF could make adequate staffing arrangements. Chmielewski reviewed a memorandum to Wahlfeldt from Hartford and Gustin, noting that management previously had asked Wahlfeldt to

schedule vacation. The memorandum reiterated that Wahlfeldt should follow instructions issued by management. Chmielewski Aff. ¶ 18; K to the Chmielewski Aff.

On March 1, 1999, Hartford and Chmielewski met with Wahlfeldt to review her progress. In particular, they reviewed the need to Wahlfeldt to administer PCF's attendance policies appropriately and without errors. Although they had counseled her regarding this issue for five weeks, Whalfeldt still made mistakes. Wahlfeldt admitted only that she had filed to monitor her veteran TSRs and refused to accept responsibility for implementing the attendance policy. Wahlfeldt needed to improve her supervisory skill so that she would be effective. Wahlfeldt again responded that she was being set up to be let go. Chmielewski and Hartfort reiterated to Wahlfeldt that they wanted to improve her performance. Chmielewski Aff. ¶ 19; L to the Chmielewski Aff.

On March 26, 1999, the supervisory development period ended with improvements in several aspects of Wahlfeldt's performance. Chmielewski and Hartford noted, among other things, the following:

- **Attendance:** We have seen improvements in you consistency of administering the policy equally. If you are not sure, you are now asking to verify your decisions. You have taken time off the calling floor on Monday to make sure that there are no errors in your attendance. You have also made it a habit to make down the absences and their make up days.

- **monitoring:** You have improved with your monitoring. You now monitor at least five calls before giving feedback. You are monitoring all reps from newer ones to veterans.

- **Daily Recaps:** The one thing to point out here is to make sure that you are consistent on what sales you are voiding.

- **System and Software:** We observed you troubleshooting dialer

problems.

> Overall, we are very pleased with the outcome of this training. We have all learned that you need to slow down and formulate a plan before you act. You should continue to think out your decisions in regards to any policies, i.e., attendance, payroll, monitoring .... We encourage you to grown and learn in your position.

Chmielewski Aff. ¶ 20; M to the Chmielewski Aff.

In September 1999, Wahlfeldt and Chmielewski met to develop a list of responsibilities for Wahlfeldt. Certain of these responsibilities included:

- Acting as a role model (dress and demeanor);
- Monitoring the attendance book;
- Updating the book for tardies, "leave early," and absences;
- Monitoring production;
- Monitoring and coaching reps (new and veteran);
- Checking reps for dress code violations;
- Giving out warnings;
- Watching and encouraging progress;
- Entering payroll hours; and
- Completing the recap and other reports.

Chmielewski Aff. ¶ 21; N to the Chmielewski Aff.

On December 6, 1999, Chmielewski evaluated Wahlfeldt's performance. Chmielewski identified several areas that needed improvement:

- **Quality of work:** This is an area where Cathy needs improvement. Cathy needs to stay focused when completing any of her responsibilities to avoid errors. . . There have been excessive errors on the recap recently, attendance book not marked to indicate what warning have been issued and updating her day off schedule with new reps. Cathy needs to double check her work to ensure that all of her responsibilities are accurate and completed each day before leaving. Cathy needs to consistently refer to her notebook and learn to troubleshoot problems independently.

- **Judgment:** There are times that Cathy needs to recognize that her judgment needs to be analyzed. Example: Making comments out on the calling floor that are discriminatory (age, height, eyesight, hearing).

> Cathy needs to learn to be able to evaluate any situations that need to be addressed, present it to management with a solution ready in mind. This will held to develop Cathy's decision making abilities.
>
> - **Leadership:** Cathy need to identify areas where her veteran reps could improve. Cathy needs to be more consistent when training reps and other within the supervisory staff. Cathy should refer back to meeting notes and personal notes to be sure that she is consistently complying with any changes or policies already in place.
>
> - **Employee Development:** When administering discipline there are times when Cathy needs to be consistent. At times veteran reps are not consistently given the necessary disciplinary that is needed for them to perform at the standard that is expected of them.
>
> - **Human Relations:** Cathy should refrain from making comments out on the calling floor about age and abilities.
>
> - **Areas to Improve:** Cathy needs to implement what she learned at the organizational seminars that she attended. This will allow her to the entire shift to focus on coaching, counseling and monitoring each employee to improve her shift performance. Cathy needs to develop her staff on a daily basis. Cathy needs to be sure that she has a clear understanding of all the policies and procedures and that they are consistently implemented at all times.

Chmielewski Aff. ¶ 22; Ex. O to the Chmielewski Aff.

Following Wahlfeldt's performance review, Chmielewski again agreed to meet with Wahlfeldt to assist her in continuing to develop her supervisory skills. Chmielewski Aff. ¶ 23. On January 19, 2000, Chmielewski met with Wahlfeldt to discuss the termination of Allison Funkhauser, a TER. Wahfeldt did not agree with Chmielewski's recommendation to terminate Ms. Funkhauser. Following Ms. Funkhauser's termination, Wahlfeldt discussed it with Vivian Pconka in the Call Center. Wahlfeldt also discussed this termination in the employee break room. Wahlfeldt also discussed her disagreement with the termination publicly which undermined management's authority. As a result, Chmielewski

issued a written warning to Wahlfeldt for breaching the company's confidentiality policy. Chmielewski Aff. ¶ 24; Ex. P to the Chmielewski Aff.

From February 8 to April 12, 2000, Chmielewski met with Wahlfeldt regularly to discuss various issues, including her monitoring of the floor, monitoring of employees, and the need for Wahlfeldt to follow PCF's calling plan and to update payroll records in a timely manner. Chmielewski also reviewed the need for Wahlfeldt to include all necessary information in written warnings, to counsel and coach TSRs attendance policy uniformly, and to ensure that vacations are scheduled appropriately. Chmielewski also reviewed the need for Wahlfedlt to complete shift reports and to prepare schedulers correctly. Chmielewski Aff.¶¶ 25-30; Exs. Q to V to the Chmielewski Aff.

On April 27, 2000, Chmielewski received a complaint of harassment from Paulina Watkins concerning Wahlfeldt. Specifically, Ms. Watkins complained that Wahlfeldt grabbed her into an office to discuss an issue with Ms. Watkins's headset. Ms. Watkins complained that Wahlfeldt used an inappropriate "motherly" tone when speaking with her. Ramirez investigated Ms. Watkins' complaint. Ms. Watkins threatened to sue PCF for harassment arising out of Wahlfeldt's conduct. As a result, Chmielewski issued a written warning to Wahlfeldt for unprofessional behavior toward another employee. Chmielewski advised Wahlfeldt that, if such an incident occurred again, she would be terminated. Wahlfeldt refused to sign the warning. Ramirez Aff. ¶ 20; Ex. L to the Ramirez Aff. Chmielewski Aff.¶¶ 31-32; Ex. W to the Chmielewski Aff.

On June 1, 2000, Chmielewski met with Wahlfeldt to review the need for Wahlfeldt to complete all paperwork at the beginning of her shift, to enforce the dress code, and

to complete her shift reports correctly. Chmielewski again reminded Wahlfeldt to review all payroll materials for accuracy. Chmielewski Aff.¶ 33; Ex. L to the Chmielewski Aff.

By failing to report payroll hours promptly, Wahlfeldt created errors for subsequent shift supervisors who completed the totals of daily hours. Wahlfeldt created errors in corporate reporting, such as sales per hour reporting errors. Wahlfeldt's errors created a "domino effect" throughout the organization. Ramirez Aff. ¶ 17.

On September 6, 2000, Wahlfeldt reprimanded an employee in an open area where she could be overheard by other employees. This conduct violated the PCF's confidentiality policy. As a result, Chmielewski issued a final written warning to Wahlfeldt. This was the third warning given to Wahlfeldt about breaching the confidentiality policy. Chmielewski Aff.¶ 34; Ex. Y to the Chmielewski Aff.

Notwithstanding PCF's repeated counseling and coaching efforts, Wahlfeldt failed to improve her supervisory skills. Consequently, Gigi Ramirez, Human Resources Manager, and Chmielewski, in consultation with other PCF management, decided that Wahlfeldt could no longer hold the position of Shift Supervisor. In light of her tenure with PCF, Wahlfeldt was offered a position in our Customer Care Department. Wahlfeldt refused the position. Chmielewski Aff.¶ 35; Ramirez Aff. ¶21.

On September 30, 2001, Wahlfeldt was terminated from employment. Chmielewski Aff.¶35; Ex. Z to the Chmielewski Aff; Remirez Aff. ¶ 21.

Following Wahlfeldt's termination, her duties were assumed by Kames Hiltabidel, assistant A.M. Shift Supervisor. Mr. Hiltabidel date of birth is November 13, 1927. At the time of Wahlfeldt's termination, Mr. Hiltabidel was 72 years of age. Ramirez Aff. ¶ 22.

No other morning supervisors engaged in conduct similar to the inappropriate supervisory conduct engaged in by Wahlfeldt. Ramirez Aff. ¶ 23.

## DISCUSSION

Summary judgment is proper in the "pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any show that there is no genuine issue of material fact." Fed. R. Civ. P. 56(c). While all reasonable inferences are drawn in favor of the nonmoving part-- *Beraha v. Baxter Health Care Corp.*, 956 F. 2d 1436, 1440 (7th Cir. 1992)-- a scintilla of supporting evidence will not suffice to oppose a motion for summary judgment. *Brownell v. Figel*, 950 F.2d 1285, 1289 (1991). In the instant case Wahlfeldt, although represented by counsel, has failed to file an appropriate response to PCF's motion for summary judgment nor has she filed a response to PCF's 56.1 statement. Therefore, all the material facts averred by PCF are deemed admitted because Wahlfeldt failed to controvert such facts. However, although Wahlfeldt failed to properly file a response to PCF's motion, this motion will only be granted if PCF carries its burden for purposes of summary judgment. *Johnson v. Gudmundson*, 35 F. 3d 1104, 1112 (7th Cir. 1994).

The ADEA makes it "unlawful for an employer...to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). When a plaintiff alleges age discrimination, and employer is liable only if age actually motivated the employer's decisions. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 141 (2000). Wahlfeldt can attempt to prove age discrimination in one of two ways: she may prove it directly with evidence that can be interpreted as

acknowledgment of discriminatory intent by PCF or its agents (*Hill v. Burrell Communications Group*, 67 F.3d 665, 667 (7th Cir 1995) or use the indirect method of proof established by *McDonnell Douglas Corp. v. Green* 411 U.S. 792 (1973).

Since Wahlfeldt alleges no direct evidence that PCF's actions were based on her age, her claim must be analyzed under the indirect method of proof. Thus, Wahlfeldt must show that she was: (1) in a protected class; (2) performing her job satisfactorily; (3) the subject of an employment action that was materially adverse; and (4) that other substantially younger and similarly situated employees were treated more favorably. *Bennington v. Caterpillar Inc.*, 275 F.3d 654, 659 (7th Cir. 1998). *Gonzalez v. Ingersoll Milling Machine Co.* 133 F.3d 1025, 1031 (7th Cir. 1998).

Wahlfeldt satisfies the first and third prongs of the *McDonnell-Douglas* test–she was 57 years old when she was terminated. PCF asserts that Wahlfeldt was not meeting its legitimate job expectations. Specifically, PCF asserts Wahlfeldt repeatedly was counseled concerning monitoring and counseling all of her staff, did not discipline the veteran TSR's consistently or counsel them to improve their sales performance, and displayed poor judgment by making reference to employees' ages and physical conditions. In addition, Wahlfeldt acted unprofessionally by grabbing another employee and pulling her into the Supervisor's Station to discuss an issue. Wahlfeldt then refused to sign the final written warning about this incident.

Moreover, Wahlfeldt refused to schedule her accrued vacation days, although she was instructed to do so twice and publicly disputed certain personnel decisions made by management, thus undermining management's credibility with her reports. Hence, it cannot be concluded that Wahlfeldt was meeting PCF's legitimate expectations.

Further, Wahlfeldt cannot show that younger similarly-situated employees were treated more favorably. Wahlfeldt has not identified any supervisory employee whose job performance was comparable to hers and who was not disciplined.

Finally, Wahlfeldt cannot demonstrate that she was replaced by a younger employee. In light of the above it can only be concluded that Wahlfeldt has failed to establish a prima facie case of discrimination under the ADEA. Accordingly, summary judgment is favor of PCF must be granted.

## CONCLUSION

For the reasons set forth above summary judgment is granted in favor of PCF and this case is hereby terminated. This is a final and appealable order.

So Ordered.

Entered: 10/2/02

Ronald A. Guzman
United State Judge